**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) No. CR 10-2112-TUC-CKJ |
| SONIA ANN PENNINGTON, et al., | ) **ORDER** |
| Defendant. | ) |
| JUANITA PENNINGTON, | ) |
| Petitioner. | ) |

Pending before the Court is the Petition of Juanita Pennington ("Pennington") requesting the Court modify the order of forfeiture, pursuant to 21 U.S.C. § 853(n)(6), to reflect Pennington's legitimate ownership interest (Doc. 261). An evidentiary hearing was conducted and the parties have presented argument.

*Factual and Procedural Background*

The government has alleged that, in April 2010, David Cruz Espinoza ("D. C. Espinoza") informed a confidential informant ("CI") working with the ATF that David Lamar Espinoza ("David") could sell the CI crack cocaine. The CI and an undercover agent then made a series of purchases of crack cocaine from D. C. Espinoza, David, Tysharra Espinoza ("Espinoza"), and Sonia Pennington ("S. Pennington"). S. Pennington and D. C. Espinoza are the parents of David and Espinoza.

On July 23, 2010, a search warrant was executed at the residence of David. Included within the items seized was $5285.00 in U.S. currency.

The indictment charged that defendants conspired together with regard to all of the sales, even though not all of the defendants were present or participated in each individual sale. The indictment also charged the defendants with the particular sales they were involved in. S. Pennington was also charged with being a prohibited possessor in possession of a firearm. All defendants have entered guilty pleas; David, S. Pennington, and Espinoza have been sentenced.

On December 23, 2011, a Preliminary Order of Forfeiture (Doc. 245) was entered in this case. On January 30, 2012, Pennington filed a Verified Petition for Ancillary Hearing Regarding Preliminary Order of Forfeiture (Doc. 251). Pennington requests the Court modify the order of forfeiture, pursuant to 21 U.S.C. § 853(n)(6), to reflect Pennington's legitimate ownership interest in the seized currency. Evidence and argument was presented to the Court on March 26, 2012, and April 4, 2012.

Pennington testified that her annual income is approximately $100,000.00 with its sources being her rental properties, her two jobs, and an adoption subsidy. Pennington testified that she routinely kept cash at her residence in a safe and that, in July of 2010, she had agreed to loan $6000 to her brother Harold Stubblefield ("Stubblefield"). Because Stubblefield was going to check out the air conditioning unit at the residence where her grandson David resided, Pennington gave $6000 to David during the week of, but before, July 23, 2010, to deliver to Stubblefield when he came to David's residence.[1] Pennington testified that the denominations ranged from five dollar bills to one hundred dollar bills and that she given the bills to David in a brown envelope on which she had written "brother"; Pennington did not give David permission to spend any of the money. Pennington testified that she assumed the money had been taken to David's residence because that was where Harold was going to go. Stubblefield's testimony corroborated the plan for the transference

---

[1] Pennington also testified that the this residence was closer to her brother's residence.

of the money to Stubblefield at David's residence. Stubblefield testified that he had not yet received the money at the time the search warrant was executed.

Alcohol, Tobacco, & Firearms ("ATF") Special Agent Creighton Brandt ("Brandt") testified regarding the execution of the search warrant at David's residence on July 23, 2010, in which $5285 of U.S. currency was seized. Currency was found in seven different locations within the master bedroom, including two one dollar bills found in a shoe box with a quantity of marijuana; $151.00 of U.S. currency found on the top of the dresser; $65.00 found in a metal cashier's drawer; five dollar bils and a one dollar bill found in another shoe box; $209.00 of U.S. currency, including five dollar bills and at least one one dollar bill, found in a night stand; $4640.0 of U.S. currency, including twenty dollar bills and at least one one hundred dollar bill, found in a box on a shelf in the walk-in closet; $105.00 of U.S. currency found on the same shelf, but not in the box, in the walk-in closet, and; $113.00 of U.S. currency, including one and five dollar bills, found in a jacket that had been hanging in the walk-in closet. Brandt testified that he did not see an envelope with the work "brother" written on it during the search of the residence.

Agent Brandt also testified that smaller currency bills (and sometimes coins) are most commonly associated with user level sales of illegal narcotics.

ATF Special Agent Paul Brostko testified that, during the search of the residence, David's rather combative girlfriend stated that the currency was her tax refund money, but did not recall if her statement was in regard to a particular quantity seized.[2] Brostko also testified that, based on debriefings and his knowledge of the investigation, firearms and drugs were sold out of the residence.

ATF Special Agent Frank Occhipinti testified that a firearm and ammunition was found in the closet from which quantities of currency had been found.

ATF Special Agent Brian Kolar ("Kolar") testified that he was not aware of any bills associated with control buys in the case that were seized during the execution of the arrest

---

[2] Pennington testified that David's girlfriend did not have a job.

- 3 -

warrant. He also testified that the investigation had taken place over a period of months and within a day, or even an hour, after a control buy is made, money can change hands several times.

During cross-examination, Pennington also testified that David informed her that he had told law enforcement that the seized money belonged to Pennington. Kolar testified that David had called his girlfriend, that Kolar had reviewed a recording of that telephone call and that David had stated, referring to the money seized at the residence, that it was not drug money, the source of the money was from David doing landscaping with Joe, and Joe could cover for David that it was David's money from landscaping.

After evidence and argument was presented to the Court, the Court took the issues of Pennington's Petition requesting the Court modify the order of forfeiture to reflect Pennington's legitimate ownership interest in the U.S. currency and the admissibility of David's telephonic statements to his girlfriend under advisement.

*Admissibility of David's Telephonic Statement to his Girlfriend*

The applicable rule states:

> When a hearsay statement – or a statement described in Rule 801(d)(2)(C), (D), or (E) – has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination.

Fed.R.Evid. 806. The applicable part of Fed.R.Evid. 801 states:

> (c) Hearsay. "Hearsay" means a statement that:
>
> > (1) the declarant does not make while testifying at the current trial or hearing; and
>
> > (2) a party offers in evidence to prove the truth of the matter asserted in the statement.
>
> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:
>
> > * * * * * *

>    (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>
>> (A) was made by the party in an individual or representative capacity;
>>
>> (B) is one the party manifested that it adopted or believed to be true;
>>
>> (C) was made by a person whom the party authorized to make a statement on the subject;
>>
>> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>>
>> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed.R.Evid. 801. David's statement to Pennington is either (1) not hearsay as defined by Fed.R.Evid. 801(c), as the statement was offered to show one reason why Pennington assumed the seized currency was her money, or (2) is not hearsay pursuant to Fed.R.Evid. 801(d)(2)**(A)**. By its terms, Fed.R.Evid. 806 only applies to a hearsay statement – or a statement described in Rule 801(d)(2)**(C), (D), or (E)**. David's statement to his girlfriend is not admissible pursuant to Fed.R.Evid. 806. The Court, therefore, will not consider David's statement to his girlfriend.

*Criminal Forfeiture*

Following the entry of an order of criminal forfeiture, any person asserting a legal interest in the property to be forfeited may petition the court for a hearing to adjudicate the validity of the claim. 21 U.S.C. § 853(n)(2). This third-party claimant must demonstrate by a preponderance of the evidence that she had a vested legal right, title, or interest in the property at the time of the commission of the acts giving rise to the forfeiture or that she was a bona fide purchaser without cause to believe the property was subject to forfeiture. 21 U.S.C. §§ 853(n)(6)(A) and (B); *United States v. Nava*, 404 F.3d 1119, 1129 (9th Cir. 2005).

The Court finds Pennington has not demonstrated by a preponderance of the evidence that she had a vested legal right or interest in the currency seized at the residence. Even if the Court accepts the testimony of Pennington as credible, it simply does not establish that the currency seized was the monies provided to David from Pennington. The amount of

money provided to David was not seized in the residence, David did not have permission to spend any of the money (yet $6000.00 was not found in the residence), the money was not found in an envelope as described by Pennington, the money was not found in only the denominations of the money provided by Pennington, and the money was not all found in one location. Indeed, Pennington testified that she "assumed" the money seized was the money she provided to David. Moreover, at the time of the seizure, David's girlfriend claimed ownership of the money. Lastly, the currency was found in proximity to the criminal activity.

Accordingly, IT IS ORDERED the Petition of Juanita Pennington requesting the Court modify the order of forfeiture, pursuant to 21 U.S.C. § 853(n)(6), to reflect Pennington's legitimate ownership interest (Doc. 261) is DENIED.

DATED this 13th day of April, 2012.

_____
Cindy K. Jorgenson
United States District Judge